## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**MUMIA ABU-JAMAL**

    **Plaintiff,**

        **v.**

**JOHN WETZEL, Secretary,**
**Department of Corrections,**

**Joseph Silva, DOC Director of Bureau**
**of Health Care Services**

**Paul Noel, BHCS Chief of Clinical**
**Services,**

**BHCS Assistant Medical Director,**

**BHCS Infection Control Coordinator,**

**Correct Care Solutions representative,**

**Correct Care Solutions,**

**Treating Physician, SCI Mahanoy**

    **Defendants.**

:
:
:   **Case No. 3:16-cv-2000**
:
:
:   **Judge Robert D. Mariani**
:
:   **JURY TRIAL DEMANDED**

**ELECTRONICALLY FILED**

## PLAINTIFF'S BRIEF IN OPPOSITION
## TO DOC DEFENDANTS' MOTION
## TO DISMISS

## I.   <u>STATEMENT OF FACTS</u>

The instant lawsuit was commenced on or about September 30, 2016 by the

Plaintiff, Mumia Abu-Jamal, an inmate incarcerated at SCI Mahanoy. He seeks an

injunction requiring that the defendants administer the direct-acting anti-viral drugs to

him so that he can be cured his chronic hepatitis C infection.  All defendants are sued

in their official capacities only.  They include Department of Corrections (DOC)

Secretary John Wetzel, Complaint ¶ 5, and Paul Noel, M.D. Chief of Clinical Services

of the DOC's Bureau of Health Care Services (BHCS). *Id.* at ¶ 6.  Defendant Noel is a

member of the hepatitis C committee.  Under a protocol he and others developed, the

hepatitis C committee is empowered to determine which inmates receive hepatitis C

treatment *Id.*  The remaining member of the hepatitis C committee are also named as

defendants *Id.* at ¶¶ 7-9.

The instant litigation was filed as a related case to *Abu-Jamal v. Kerestes, et al.,* 15-

Civ. 967 (RDM).  In that case the Plaintiff filed a motion for a preliminary injunction

requesting the same relief requested herein.  That motion was denied on August 31,

2016 after an evidentiary hearing and post-hearing submissions.  In its decision, the

court found as a matter of law that the DOC's hepatitis C treatment policy violated

the Eighth Amendment.  However, the court concluded that the defendants before it

were not the proper parties to whom an injunction could issue. *Id.* at ¶¶ 107-108

(citing to *Abu Jamal v. Kerestes*, 2016 WL 4574646 (M.D. Pa. 2016)).

1

Chronic, or "active", hepatitis C is characterized by the presence of the virus in the bloodstream, known as a "viral load". The plaintiff, Mumia Abu-Jamal, has a viral load and, therefore, chronic hepatitis C. (*Id.* at ¶¶ 14, 87). Inflammation caused by the virus can lead to scarring, known as fibrosis, and extreme scarring, known as cirrhosis, both of which affect liver functioning. *Id.* at ¶ 15.  At least 20% of chronic hepatitis C patients will develop cirrhosis and between 2 and 7% of them <u>per year</u> will develop liver cancer. *Id.* at ¶ 18.  The overall progression rate to liver cancer of those with cirrhosis is 19% *Id* at ¶ 19.  In addition, 20% of those that develop cirrhosis will die of other complications of the disease. *Id.* at ¶ 20.

Chronic hepatitis C often causes complications outside of the liver, including anemia and diabetes. *Id* at ¶ 22. In addition, between 20-40% of chronic hepatitis C patients have cutaneous (skin) manifestations of the disease. Among them are necrolytic acral erythema (NAE), and more common ones such as psoriasis, eczema and pruritus.  *Id.* ¶ 23.

Available anti-viral drugs have a 90-95% cure rate. They have become the standard of care in the medical community. *Id.* at ¶ 24.  The American Association for the Study of Liver Diseases (AASLD), a body that the Center for Disease Control (CDC) looks to for establishing the standard of care, recommends that everyone with chronic hepatitis C be treated irrespective of disease stage or prognosis for progression. *Id.* at ¶¶ 25-26.

Mr. Abu-Jamal tested positive for the hepatitis C antibody in 2012 and a blood test in July 2015 confirmed that he is chronic. *Id.* at ¶¶ 46, 87. Diagnostic tests performed during 2015 demonstrate that his disease is progressing and that he has significant liver scarring if not full blown cirrhosis. A May 18, 2015 CT scan determined that the "overall appearance of the liver is irregular. Correlate for cirrhosis." *Id.* ¶ 77. Plaintiff's platelet level, a sign of disease progression has been consistently below normal since late 2015 up to and including August 2016 *Id.* ¶ 93. It is estimated that he has a fibrosis level of 2-2.5 on a scale of 0-4, a level consistent with significant liver scarring. That fibrosis level also places him at risk for rapid disease progression, including progression to liver cancer and adult onset diabetes *Id.* ¶¶ 92, 95. There is a more than 50% chance that plaintiff has already progressed to cirrhosis and suffered irreversible liver damage. *Id.* at ¶ 94.

For over two years plaintiff has suffered from a pruritic rash that has, at times, covered 70% of his body. *Id.* at ¶¶ 49-53. The rash has caused and continues to cause severe discomfort. *Id.* at 96. The skin condition is a manifestation of hepatitis C and will only be cured if the hepatitis C is cured. *Id.* at ¶ 97. In addition, plaintiff is anemic, also a manifestation of hepatitis C. *Id.* at ¶ 98.

In 2015, defendant Noel, with the knowledge and approval of defendant Wetzel, developed a protocol for treating inmates with chronic hepatitis C with the new anti-viral medications. *Id.* at 31. Under that protocol, only inmates with decompensated cirrhosis with bleeding are authorized to receive the anti-viral

3

medication *Id.* at ¶¶ 32-33, Complaint Exhibit A.  When the disease has progressed to that stage a person has already suffered irreversible liver damage and has been at a significantly higher risk of developing liver cancer and other severe extrahepatic manifestations of hepatitis C that adversely affect quality of life. *Id.* at ¶ 35.

The protocol has also set up a committee to determine which inmates receive anti-viral drugs under the DOC protocol.  Defendant Noel, as BHCS Chief of Clinical Services, defendant BHCS Assistant Medical Director, defendant BHCS Infection Control Coordinator and defendant Correct Care Solutions representative all sit on that committee. *Id.* at ¶ 38.  The protocol continues to be administered by the hepatitis C committee that includes the defendants. *Id.* at ¶¶ 40-41.

The hepatitis C committee determined that the plaintiff not receive the anti-viral drugs that would cure his hepatitis C.  *Id.* at ¶ 103.  The defendants know that there is no medical justification for refusing to treat the plaintiff with the anti-viral medication. *Id.* at ¶ 105.

On August 31, 2016, the Court in *Abu-Jamal v. Kerestes* ruled "[t]hat the standard of care with respect to the treatment of chronic hepatitis C is the administration of newly-developed DAA medications, such as Harvoni, Sovaldi and Viekira." *Id.* at ¶ 107.  The Court found as a matter of law that the DOC protocol "presents a conscious disregard of a known risk of advanced cirrhosis and death by esophageal hemorrhage" and as such "presents deliberate indifference to the known risks which follow from untreated hepatitis C."  *Id.* at ¶ 108.

## LEGAL ARGUMENT

### 1. The First-Filed Rule Is Inapplicable And in Any Event Does Not Provide a Basis For Dismissal

The defendants argue that dismissal is appropriate under the "first-filed" rule

on the purported ground that the claims in the instant case are "duplicative" of those

before this Court in *Abu-Jamal v. Kerestes, et al.,* 15-Civ. 967 (RDM). Doc. 17, p. 3-7

The argument should be rejected because 1) the rule does not apply, and 2) even if the

rule does apply dismissal is not the authorized remedy under the Third Circuit's *en*

*banc* decision in *Chavez v. Dole Food Corp.* 836 F.3d 205 (3d Cir. 2016).

### The First-Filed Rule Does Not Apply

The purpose of the first-filed rule is to avoid litigation of the same claim in

different courts. *EEOC v. University of* Pennsylvania, 850 F.2d 971, 971-972 (3d Cir.

1988). Its letter and spirit are grounded in "equitable principles". Thus,

> a federal district court presented with a second filed parallel
> lawsuit must remember that the rule's primary purpose is to
> avoid burdening the federal judiciary and to "prevent
> judicial embarrassment of conflicting judgments" and
> fundamental fairness dictates the need for fashioning a
> flexible response to the issue of concurrent jurisdiction.

*DePuy Synthes Sales, Inc. v. Edwards*, 23 F.Supp.3d 472, 477 quoting *EEOC v. University of*

*Pennsylvania*, 850 F.2d 969, 977 (3d Cir. 1988). The United States Court of Appeals for

the Third Circuit has interpreted the rule narrowly. Application is warranted only

where the latter filed case is "truly duplicative of the suit before the court. That is,

[t]he one must be materially on all fours with the other…the issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other". *Grider v. Keystome Health Plan Central, Inc.* 500 F.3d 322, 333, n.6 (3d Cir. 2007). *See also Compl. Of Bankers' Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980) ("It is important to note, however, that only truly duplicative proceedings be avoided. When the claims, parties, or requested relief differ, deference may not be appropriate.").

Application of the foregoing compels a finding that the rule does not apply herein. First, the instant case and *Mumia I* are pending before the <u>same</u> court, not different courts. Thus, there is no risk of judicial embarrassment or conflicting decisions, the primary purpose of the rule. *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016 (*en banc*) (First-filed rule is a comity based doctrine applicable when duplicative lawsuits are filed in two different federal courts).[1]

Second, the instant action is not "truly duplicative" of *Mumia I*. Resolution of the injunctive relief claim in *Mumia I* will not leave "little or nothing to be determined" in the instant case because the parties, and the legal issues affecting them, are not identical. There is only one party who is a defendant in both the instant case and *Mumia I*, the defendant Joseph Silva. In both cases he is sued in his official

---

[1] *Ball v. D'Addio,* 2012 U.S.Dist. LEXIS 115558 (M.D. Pa. 2012), relied upon by the defendants for the proposition that the rule can apply where successive actions are filed before the same court, Doc. 17, p. 7, has, to say the least, unique facts. There, the *pro se* plaintiff had filed 25 lawsuit some of which contained identical claims against the same parties.

6

capacity as Director of the Bureau of Health Care Services (BHCS). The remaining defendants in the instant case are not named in *Mumia I*. All are members of the DOC's hepatitis C committee. This is significant – and precludes application of the first-filed rule – for the following reason. In its August 31, 2016 decision denying plaintiff's preliminary injunction motion in *Mumia I*, this Court held that because none of the defendants in that case were members of the hepatitis C committee, the court was precluded from issuing an injunction. *See Abu-Jamal v. Kerestes*, 15-Civ. 967, Doc. 197, p. 5-6.[2] With two exceptions, (defendants Wetzel and Silva in their official capacities) all of the defendants in the instant case <u>do</u> sit on the hepatitis C committee. They would be among those individuals to whom an injunction could properly issue. Since resolution of the claims against the *Mumia I* defendants will not resolve the claims against the instant defendants, the first-filed rule does not apply. *Grider v. Keystone Health Plan Central, Inc.* at 333, n.6; *Kedia v. Jamal*, 2007 WL 1239202*3 (D.N.J. 2007) (denying dismissal under first-filed rule where there was not an identity of parties). *Lexington Ins. Co v. Caleco, Inc.* 2003 WL 21652163*5 (ED.Pa. 2003).

The defendants point out that Mr. Abu Jamal has filed a motion to amend in *Mumia I*. That motion seeks to add DOC Secretary John Wetzel and BHCS Clinical Director Paul Noel (who sits of the hepatitis C committee) as defendants. Doc. 17, p. 7. However, the defendants to fail to acknowledge that their attorneys in this case,

---

[2] Plaintiff has filed a motion to reconsider that determination that is *sub judice*.

the office of DOC counsel, also represents the defendants in *Mumia I*. In *Mumia I*,

they have filed papers <u>opposing</u> plaintiff's motion for leave to amend and it remains

*sub judice*. Until at least such time as that motion is granted and Noel is added as a

defendant in his official capacity, none of the defendants in *Mumia I* would, under this

Court's August 31, 2016 ruling in that case, be appropriate parties for injunctive relief.

*Milhouse v. Smith*, 2016 U.S.Dist.LEXIS 79933 (M.D.Pa. 2016), relied upon by the

defendants, (Doc, 17, p. 7), is inapposite. In that case, the motion to amend had been

granted and the supplemental complaint filed.

### Dismissal Is Not Appropriate

On September 2, 2016, the United States Court of Appeals for the Third

Circuit, sitting *en banc*, issued its decision in *Chavez v. Dole Foods Company, Inc.*, 836 F.3d

205 (3d Cir. 2016), a case not cited by the defendants. It held that where a District

Court finds that the first-filed rule applies

> in the vast majority of cases, a court exercising its
> discretion under the first-filed rule should stay or transfer a
> second filed suit. Even a dismissal *without prejudice* may
> create unanticipated problems. A dismissal *with prejudice* will
> almost always be an abuse of discretion.

*Id.* at 220-221. This conclusion, the Court held, is "consistent with and perhaps even a

necessary consequence of our obligations under Article III." *Id.* Accordingly, Courts

applying the rule "should be careful not to cause unanticipated prejudice to the

litigants before it." *Id* at 219. While the Court noted that there may be exceptions to

this general rule, *Id.* at 221, none apply here. The instant suit is not harassing or

8

vexatious.  It did not result from plaintiff's failure to follow court rules such as the

failure to serve process within the appropriate time.  It is not the product of forum-

shopping. On the other hand, dismissal, even dismissal without prejudice, would

cause unanticipated problems.  As set forth *supra*, none of the current defendants in

*Mumia* I sit on the hepatitis C committee, a fact this Court found determinative in its

August 31, 2016 decision denying injunctive relief.   Should the claims against

committee members named herein be dismissed, plaintiff would be in the position of

having proven an Eighth Amendment violation, yet denied a judicial forum in which

to secure a preliminary or permanent injunctive remedy.

### Plaintiff Has Stated a Plausible Claim for Relief

Defendants' argue that "plaintiff cannot establish that he has a reasonable

probability of success on the merits of his claim."  *See* Doc. 17, Def. Br. in Support of

Motion to Dismiss, 8.  That is not the standard that this Court must apply.  To prevail

on this motion, Plaintiff is only required to plead "enough facts to state a claim to

relief that is plausible on its face."  *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir.

2011) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1322 n.12 (2011)).  A

court considering a motion to dismiss for failure to state a claim "must accept as true

the factual allegations in the complaint."  *Langford v. City of Atlantic City*, 235 F.3d 845,

847 (3d Cir. 2000).  The court must construe the facts and reasonable inferences that

can be drawn from the facts in the light most favorable to the non-moving party. *Dee*

*v. Marriot Int'l, Inc.*, No. Civ. A. 99-2459, 1999 WL 975125, at *2 (E.D. Pa. Oct. 6,

1999) (citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.

1994)).  The burden is on the moving party to show there is no actionable claim.

*Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980).

> ### a. Plaintiff has alleged a plausible claim for relief based on defendants' refusal to treat his chronic hepatitis C, causing him ongoing serious medical injury and risk of further harm.

Plaintiff is not complaining of a mere disagreement over the proper course of

treatment.  Deliberate indifference may be established where, as here, prison officials

1) deny reasonable requests for medical treatment and such denial exposes the inmate

to undue suffering or the threat of tangible physical injury, 2) intentionally refuse to

provide needed medical care, 3) delay necessary medical care for non-medical reasons,

or 4) opt for an easier and less efficacious treatment of the inmate's illness. *Monmouth*

*County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir 1987).  Plaintiff has

alleged all four of the foregoing factors.  *Pearson v. Prison Health Service*, 519 Fed. App'x.

79, 84 (3d Cir. 2013) ("the number of entries in the medical records does not

necessarily demonstrate that [plaintiff] received constitutionally sufficient medical

care"); *Brown v. Johnson*, 387 F.3d 1344(11th Cir. 2004) (Deliberate Indifference may be

shown by grossly inadequate care as well as by a decision to take an easier but less

efficacious course of treatment.); *See also Henry v. Wilson*, 2008 WL 131164 *5

(W.D.Pa. 2008) (citing *Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)

("Deliberate indifference can be shown where prison authorities prevent an inmate from receiving a recommended treatment.").

The complaint sets forth detailed allegations that the defendants are refusing to cure plaintiff's hepatitis C, a serious medical need. Their inaction has and is subjecting him to pain, suffering and a substantially increased risk of death. Complaint ¶¶ 14-23. Furthermore, the defendants know that their refusal to administer the cure is conduct that falls below the accepted medical standard in the community. That standard recognizes that because of the numerous benefits of early treatment, all those suffering from chronic hepatitis C should be treated irrespective of disease progression. *Id.* ¶¶ 25-26, 106.

Concerning the plaintiff himself, the defendants know that Mr. Abu-Jamal has at least stage 2-2.5 fibrosis, a category that is consistent with liver scarring. *Id.* at ¶ 92. Moreover, they know that any level of fibrosis "is a strong risk factor for future fibrosis progression. *Id.* According to the defendants themselves, there is a 63% chance that Mr. Abu-Jamal already has cirrhosis. *Id.* at ¶ 102. Should he have cirrhosis of any stage, there is at least a 19% chance that his condition will progress to liver cancer. Just by the fact that he has chronic hepatitis C, Plaintiff has a 20% chance of dying from that disease.

The defendants have available to them objective evidence of further disease progression. For the last 11 months, Mr. Abu-Jamal's bloodwork has shown abnormally low platelet counts, an indication of disease progression. *Id.* at ¶ 93. Mr.

Abu-Jamal continues to suffer from extra-hepatic manifestations of his hepatitis C in the form of a pruritic rash and anemia. *Id.* at ¶¶ 96-98. Defendants, including Dr. Noel and the rest of the DOC's hepatitis C committee, are aware that untreated, chronic hepatitis C poses serious risks to health, and that early treatment has benefits to the patient and society. *Id.* at ¶¶ 100-118. Defendant Noel has even admitted that there is no medical reason not to treat Mr. Abu-Jamal, and that it is cost, not medicine, that governs who is and who is not treated.   *Id.* at ¶¶ 105, 117.  As recognized by this court in *Abu-Jamal v. Kerestes*: "Outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated and (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials." *Abu-Jamal v. Kerestes*, 2016 WL 4574646, *14 (citing cases).

### b.  Cases relied on by defendants are distinguishable as not having sufficient evidence in support of their claims and are therefore not controlling

Defendants' assert that plaintiff's right to direct acting anti-viral medication "is far from clearly established". Doc. 17, p. 10.  That, however, is the standard that is applicable when assessing whether a government official, sued for money damages, is entitled to the defense of qualified immunity.  *See, e.g. Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Where, as here, only injunctive relief is sought the right need not be "clearly established" for plaintiff to prevail.  *Montanez v. Pennsylvania Department of Corrections*, 773 F.3d 472, 488 (3d Cir. 2014).  To survive a Fed.R.Civ.P. 12(b)(6)

motion to dismiss, the plaintiff's claim need only be "plausible". *Renfro v. Unisys Corp.,* 671 F.3d at 321. Accordingly, the cases cited by the defendants at pages 10-12 of their brief are of only marginal relevance on this motion to dismiss.

In any event, the defendants' statement that "every court that has reached a decision on this issue has held that monitoring and treatment under prioritization protocols is sufficient for Eighth Amendment purposes" is misleading. Doc. 17, p. 10, Of the 16 cases cited by the defendants, each was brought by a pro se plaintiff. *Binford, Dulak, Smith, King, Birckbichler* , *Banks* and *Hankins* are inapposite because they involved motions for summary judgment where it is the plaintiff's burden to come forward with evidence, a burden not applicable here.

The cases are distinguishable in other ways. *Asenzi* was decided in 2007 before the development of the new drugs. In *Harrell,* and *Shabazz,* the plaintiffs did not claim that they were presently experiencing any physical manifestations of the hepatitis C. And in *Shabazz* the court stated that the defendant presented no medical proof that he should receive the therapy he sought. That is not Mr. Abu-Jamal's burden at the motion to dismiss stage. In *Taylor* and *Dulak,* the court stressed that the plaintiff was not arguing that the availability of new anti-virals had altered the standard of care. In *Melendez,* the defendant made assertions that were conclusively refuted by medical records.

*Binford v. Kenney* did not stand for the proposition that non-treatment is constitutional provided that a patient is "monitored". 2015 WL 6680272 (E.D. Wash.

Nov. 2, 2015).  In fact, the court recognized that "adherence to DOC policy does not, on its own, mean the Eighth Amendment has been satisfied." *Id.* at 3. It ruled for the defendants because the plaintiff "fail[ed] to present *any evidence* regarding any Defendants' subjective state of mind." *Id.*  Defendants' motion to dismiss, of course, does not even require Mr. Abu-Jamal to present evidence to proceed to discovery, but instead only requires that the allegations are sufficient to state a claim for relief. Defendants' effort to deflect attention from the allegations in Mr. Abu-Jamal's complaint with these un-counseled cases that are factually and procedurally distinguishable cannot alter the fact that they are deliberately refusing Mr. Abu-Jamal treatment for his hepatitis C despite their knowledge that he is suffering harm and a greater – and certain – risk of future harm without any medical justification whatsoever.

## **CONCLUSION**

For the foregoing reasons, this Court should deny defendants' motion to dismiss.

Respectfully submitted,

*/s/ Bret D. Grote*
Bret D. Grote
PA I.D. No. 317273
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221
Telephone:  (412) 654-9070
bretgrote@abolitionistlawcenter.org

*/s/ Robert J. Boyle*
Robert J. Boyle
277 Broadway, Suite 1501
New York, N.Y. 10007
(212) 431-0229
Rjboyle55@gmail.com
NYS ID# 1772094
*Pro hac vice*

*Counsel for Plaintiff*

14

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this Brief in Opposition to DOC Defendants' Motion to Dismiss upon each defendant in the following manner:

Service Via Email and ECF:

For Defendants Wetzel, Noel, Silva, BHCS
Medical Director, BHCS Infection Control Coordinator:
Maria Maucus, Esquire
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
lneal@pa.gov

For Defendants Correct Care Solutions, CCS representative,
and Treating Physician, SCI Mahanoy
Samuel H. Foreman, Esquire
Caitlin Goodrich, Esquire
sforeman@wglaw.com
cgoodrich@wglaw.com

*s/ Bret D. Grote*
Bret D. Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA  15221

Dated: November 22, 2016