IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MUMIA ABU-JAMAL

   Plaintiff,

   v.

JOHN WETZEL, Secretary,
Department of Corrections,

Joseph Silva, DOC Director of Bureau
of Health Care Services

Paul Noel, BHCS Chief of Clinical
Services,

BHCS Assistant Medical Director,

BHCS Infection Control Coordinator,

Correct Care Solutions representative,

Correct Care Solutions,

Treating Physician, SCI Mahanoy

   Defendants.

:
:
:  Case No. 16-Civ. 2000
:
:  Judge Robert D. Mariani
:
:  JURY TRIAL DEMANDED
:
:  ELECTRONICALLY FILED

**PLAINTIFF'S REPLY BRIEF IN
SUPPORT OF MOTION FOR A PRELIMINARY
INJUNCTION**

I.      **The First-Filed Rule Is Inapplicable and Not a Bar To Relief.**

The purpose of the first-filed rule is to avoid litigation of the same claim in different courts. *EEOC v. University of Pennsylvania,* 850 F.2d 971, 971-972 (3d Cir. 1988). Its letter and spirit are grounded in "equitable principles". Thus,

> a federal district court presented with a second filed parallel lawsuit must remember that the rule's primary purpose is to avoid burdening the federal judiciary and to "prevent judicial embarrassment of conflicting judgments" and fundamental fairness dictates the need for fashioning a flexible response to the issue of concurrent jurisdiction.

*DePuy Synthes Sales, Inc. v. Edwards*, 23 F.Supp.3d 472, 477 quoting *EEOC v. University of Pennsylvania*, 850 F.2d 969, 977 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has interpreted the rule narrowly. Application of the rule is warranted only where the latter filed case is "truly duplicative of the suit before the court. That is, '[t]he one must be materially on all fours with the other…the issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other'". *Grider v. Keystome Health Plan Central, Inc.* 500 F.3d 322, 333, n.6 (3d Cir. 2007) quoting *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997). *See also Compl. Of Bankers' Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980) ("It is important to note, however, that only truly duplicative proceedings be avoided. When the claims, parties, or requested relief differ, deference may not be appropriate.").

Application of the foregoing compels a finding that the rule does not apply herein. First, the instant case and *Mumia I* are pending before the <u>same</u> court, not

1

different courts. Thus, there is no risk of judicial embarrassment or conflicting decisions, the primary purpose of the rule. *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016 (*en banc*) (First-filed rule is a comity based doctrine applicable when duplicative lawsuits are filed in two different federal courts).[1]

Second, the instant action is not "truly duplicative" of *Mumia I*. Resolution of the injunctive relief claim in *Mumia I* will not leave "little or nothing to be determined" in the instant case because the parties, and the legal issues affecting them, are not identical. There is only one party who is a defendant in both the instant case and *Mumia I*, the defendant Joseph Silva. In both cases he is sued in his official capacity as Director of the Bureau of Health Care Services (BHCS). The remaining defendants in the instant case are not named in *Mumia I*. All are members of the DOC's hepatitis C committee. This is significant for the following reason. In its August 31, 2016 decision denying plaintiff's preliminary injunction motion in *Mumia I*, this Court held that because none of the defendants in that case were members of the hepatitis C committee, the court was precluded from issuing an injunction. *See Abu-Jamal v. Kerestes*, 2016 WL 4574646, *9-10.[2] With two exceptions, (defendants Wetzel and Silva in their official capacities) all of the defendants in the instant case <u>do</u> sit on

---

[1] *Ball v. D'Addio,* 2012 U.S.Dist. LEXIS 115558 (M.D. Pa. 2012), relied upon by the defendants for the proposition that the rule can apply where successive actions are filed before the same court, Doc. 17, p. 7, has, to say the least, unique facts. There, the *pro se* plaintiff had filed 25 lawsuits, some of which contained identical claims against the same parties.

[2] Plaintiff has filed a motion to reconsider that determination that is *sub judice*.

the hepatitis C committee. They would be among those individuals to whom an injunction could properly issue. Since resolution of the claims against the *Mumia I* defendants will not resolve the claims against the instant defendants, the first-filed rule does not apply. *Grider v. Keystone Health Plan Central, Inc.* at 333, n.6; *Complaint of Bankers' Trust v. Chatterjee*, 636 F.2d at 40; *Kedia v. Jamal*, 2007 WL 1239202*3 (D.N.J. 2007) (denying dismissal under first-filed rule where there was not an identity of parties). *Lexington Ins. Co v. Caleco, Inc.* 2003 WL 21652163*5 (ED.Pa. 2003).

The defendants point out that Mr. Abu Jamal has filed a motion to amend in *Mumia I* seeking to add John Wetzel and Paul Noel as defendants. But that motion has not been granted and DOC counsel has opposed their inclusion in that case. Should the motion to amend be denied, they would only be named in the instant case. *Milhouse v. Smith*, 2016 U.S.Dist.LEXIS 79933 (M.D.Pa.), relied upon by the defendants (Doc, 17, p. 7), is inapposite. In that case, the motion to amend had been granted and the supplemental complaint filed.

Notwithstanding the foregoing, application of this discretionary rule would prejudice plaintiff. On September 2, 2016, the United States Court of Appeals for the Third Circuit, sitting *en banc*, issued its decision in *Chavez v. Dole Foods Company, Inc.*, 836 F.3d 205 (3d Cir. 2016), a case not cited by the defendants. It cautioned against application of the rule when to do so would deny a litigant a judicial forum. It held that where a District Court finds that the first-filed rule applies it "should be careful not to cause unanticipated prejudice to the litigants before it." *Id* at 219.

3

As set forth *supra*, none of the current defendants in *Mumia* I sit on the hepatitis C committee, a fact this Court found determinative in its August 31, 2016 decision denying injunctive relief.  Should the first-filed rule be applied here, plaintiff would be in the position of having proven an Eighth Amendment violation, yet denied a judicial forum in which to secure a preliminary or permanent injunctive remedy.  The defendants' motion to dismiss based upon the first-filed rule should, therefore, be denied.

> II.  **Plaintiff Has a Reasonable Likelihood of Success on the Merits**
>
> > a.  **Defendants do not dispute that Plaintiff is suffering liver damage, serious extra-hepatic symptoms, and increased risk of substantial harm that would be eliminated by treatment with the direct-acting antiviral medications**

Plaintiff has submitted ample evidence that defendants are intentionally refusing him treatment for his hepatitis C in knowing disregard of the risk to his health. Critically, none of this evidence is disputed in defendants' opposition papers.

It is not disputed that Mr. Abu-Jamal has chronic hepatitis C and is, at a minimum, at fibrosis level 2-2.5 Harris: V1, 112, V2, 21-22; Cowan: V2, 75.  That is a level consistent with significant liver scarring. *Id.*  Any level of fibrosis "is a strong risk factor for future fibrosis progression. Ex.9, p. 11.   The defendants' own expert opined that there is a 63% chance that Mr. Abu-Jamal currently has cirrhosis. Noel: V3, 120-123.   For more than 11 months Mr. Abu-Jamal has had abnormally low platelet counts, an indication of further disease progression. Harris: V1, 148; Cowan,

V3, 41; Harris Dec. Ex. 12, Par. 5-6. Plaintiff's June, 2016 platelet count had sunk even further, to 124 Ex. 17. The defendants' do not dispute that Mr. Abu-Jamal continues to suffer from a pruritic rash and anemia, both of which are relatively common extrahepatic manifestations of hepatitis C. Schleicher, V2, 82-84; Harris: V1, 129, 151-152; Harris Dec., Ex.12., Pars 6-7.

DOC expert Jay Cowan has acknowledged that Mr. Abu-Jamal's risk of further disease progression would be reduced to zero if he was treated. Cowan: V3, 22-24. On a broader level, both defendant Noel and Dr. Cowan agreed that untreated, chronic hepatitis C poses serious risks to health, that early treatment has benefits to the patient and society, and that the AASLD and the Center for Disease Control have stated that treatment for all is the standard of care. Cowan: V2, 212; V3, 25-28; Ex. 9, p. 3. Defendant Noel has even admitted that there is no medical reason not to treat Mr. Abu-Jamal. V3, 154. Rather, monetary cost is the only reason for their refusal to treat him. V3, 77. The foregoing undisputed facts establish a violation of the Eighth Amendment because "[o]utright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated and (2) imposition of a seriously unreasonable condition on such treatment, both constitute deliberate indifference on the part of prison officials." *Abu-Jamal v. Kerestes*, 2016 WL 4574646, *14 (citing cases).

### b.  Defendants' Protocol for Treating Hepatitis C Remains Deficient

The defendants' claim that "the landscape has changed *vis-à-vis* the

Department's treatment of inmates with Hepatitis C". The defendants' hyperbole notwithstanding, examination of the revised protocol reveals that it falls far below what the Constitution requires.

Under the revised protocol, just like the old one, an inmate must have already progressed to cirrhosis to be even <u>considered</u> for treatment. Dkt. 18-1, Revised Protocol, § D. Diagnosing Cirrhosis (indicating that cirrhosis is a prerequisite to treatment). At that point the patient has already suffered significant, irreversible liver damage. Harris Dec. Ex. 12, Pars. 9, 16. Moreover, as Dr. Harris explained, referencing the AASLD Guidelines,

> so long as hepatitis C remains untreated, patients who have not advanced to cirrhosis have a significantly higher risk of developing liver cancer and sometimes other, fatal, complications of liver disease. [For example], patients with untreated hepatitis C have a three-fold greater risk of developing Type II diabetes.

(Harris Dec., Ex. 12, ¶¶ 10-11). By refusing to authorize treatment for all chronic hepatitis C patients irrespective of fibrosis level, the protocol thereby falls below the standard of care for treatment of chronic hepatitis C as adopted by the AASLD and the CDC. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (Eighth Amendment violation shown where defendants know of and disregard an excessive risk to inmate health or safety.)

Even those who have progressed to cirrhosis, fibrosis level 4, are <u>not</u> scheduled for treatment with the anti-viral drugs under the revised protocol. Rather, they are

6

seen by medical staff every month and administered blood work every six months. *Id.* at § G(c)-(d) at page 20-6. That fact, Dr. Harris observed, places many inmates at risk of death. This is so because between 1% and 7% of cirrhosis patients progress to liver cancer each year. Assuming conservatively that 20% of the 5,268 hepatitis C patients in the DOC have progressed to cirrhosis, anywhere from 10-70 of them will progress each year to liver cancer. Their prognosis for survival, Dr. Harris has stated, is "extremely poor". Harris Dec., Ex. 12, Par. 15. Thus, to not immediately treat even in the face of a cirrhosis diagnosis is also to knowingly disregard an excessive risk to inmate health and safety. *Id.*

Moreover, the revised protocol does not even pretend to do a good job at identifying those who have progressed to cirrhosis. DOC now relies on the APRI score. The protocol itself acknowledges that the test is only 37% sensitive at lower scores, meaning that it fails to identify 63% of those who actually have cirrhosis. *Id* at p. 20-2. Cowan: V3, 36; Noel V3, 115.

Like the old protocol, the decision to recommend treatment is still made by the hepatitis C treatment committee § I, at p. 20-10. Prior to any treatment, the patient is still screened for the presence of esophageal varices, just like the old protocol. *Id.* § I 3(b) at 20-10. If those are found only then is the patient referred to the supervising physician for the ordering of the medication. *Id.* § I(4)(c) at page 20-11.

The revised protocol is, therefore, more of the same. While it categorizes chronic hepatitis C patients, it sets forth no time frame for treatment, even for those

7

in Priority Level I. There is no evidence that the DOC is treating or has a schedule for treating those in Priority Level I, including those with cirrhosis and those with HIV/HCV co-infection, which as a matter of simple statistics must be far more than the 50 inmates the DOC projects it will treat annually. It is all well and good that the DOC placed those with cirrhosis in that category. But if one's health still must deteriorate to decompensated cirrhosis before treatment is ordered, being in that category is meaningless.

In response to this motion, the defendants have not submitted an affidavit stating that any inmate, other than inmates with esophageal varices, have been or will be treated, and/or whether the DOC has any plans to initiate such treatment. That the DOC has no intention of treating anyone other than those with decompensated cirrhosis is demonstrated by the fact that it has only treated 50 of 5400 inmates so far and has plans to treat only 50 more in 2017. Ex. 16, Par. 3.[3]

In conclusion, the revised protocol, like the one before it, "prolong[s] the suffering of those who have been diagnosed with chronic hepatitis C and allow[s] the progression of the disease to accelerate so that it presents a greater threat of cirrhosis, hepatocellular carcinoma, and death of the inmate with such disease." *Abu-Jamal v. Kerestes*, 2016 WL 4574646, *9.

---

[3] Budget request accessible at www.cor.pa.gov/Documents/2016-2017%DOCAppropriations%20Testimony.pdf

### c. Cases relied on by defendants are distinguishable as not having sufficient evidence in support of their claims and are therefore not controlling

Defendants' assert that "any right to immediate access to DAA medication is far from clearly established [because] every court that has reached a decision on this issue has held that monitoring and treatment under prioritization protocols is sufficient for Eighth Amendment purposes." Doc. 18, Def. Br. in Opposition, p. 12. Defendants frame the issue incorrectly. That is the qualified immunity standard, *see, e.g. Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), not the standard applicable on this motion. Plaintiff need not show that the right to DAA drugs is clearly established. He only needs to establish a reasonable likelihood of success on the merits. *Gerardi v. Pelullo*, 16 F.3d 1363, 1373 (3d Cir. 1994). Moreover, the defendants' statement is misleading. Of the 16 cases cited by the defendants each was brought by a pro se plaintiff. In none of the cases was *any* expert medical testimony proffered by a plaintiff about the risks inherent in the failure to treat hepatitis C at the pre-cirrhosis stage. Nor was there any evidence pertaining to the evolving standard of care for the treatment of hepatitis C as evidenced by the AASLD Guidelines and the CDC's adoption of them.

The cases are distinguishable in other ways. *Asenzi* was decided in 2007 before the development of the new drugs. In *Harrell,* and *Shabazz,* the plaintiffs did not claim that they were presently experiencing any physical manifestations of the hepatitis C. And in *Shabazz* the court stated that the defendant presented no medical

9

proof that he should receive the therapy he sought. In *Taylor* and *Dulak*, the court stressed that the plaintiff was not arguing that the availability of new anti-virals had altered the standard of care. In *Melendez,* the defendant made assertions that were conclusively refuted by medical records.

The defendants misleadingly suggest that *Binford v. Kenney* stands for the proposition that non-treatment is acceptable provided a patient is "monitored". 2015 WL 6680272 (E.D. Wash. Nov. 2, 2015). That is not what the court held. The court recognized that "adherence to DOC policy does not, on its own, mean the Eighth Amendment has been satisfied." *Id.* at 3. The court actually found for defendants because the plaintiff "fail[ed] to present *any evidence* regarding any Defendants' subjective state of mind." *Id.*

## CONCLUSION

This Court should order the DOC defendants to treat Plaintiff's hepatitis C with the direct-acting antiviral medications.

                                         Respectfully submitted,

*/s/ Bret D. Grote*                      */s/ Robert J. Boyle*
Bret D. Grote                         Robert J. Boyle
PA I.D. No. 317273                 277 Broadway, Suite 1501
Abolitionist Law Center             New York, N.Y. 10007
P.O. Box 8654                        (212) 431-0229
Pittsburgh, PA  15221              Rjboyle55@gmail.com
Telephone:  (412) 654-9070       NYS ID# 1772094
bretgrote@abolitionistlawcenter.org   *Pro hac vice*

                                         *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of this Reply Brief in Support of Plaintiff's Motion for Preliminary Injunction for Hepatitis C Treatment upon each defendant in the following manner:

Service Via Email and ECF:

For Defendants Wetzel, Noel, Silva, BHCS
Medical Director, BHCS Infection Control Coordinator:
Laura Neal, Esquire
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050
lneal@pa.gov

For Defendants Correct Care Solutions, CCS representative,
and Treating Physician, SCI Mahanoy
Samuel H. Foreman, Esquire
Caitlin Goodrich, Esquire
sforeman@wglaw.com
cgoodrich@wglaw.com

*s/ Bret D. Grote*
Bret D. Grote
Abolitionist Law Center
P.O. Box 8654
Pittsburgh, PA 15221

Dated: November 22, 2016